# UNITED STATES DISTRICT COURT
## District of Kansas
(Topeka Docket)

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        v.                             **CASE NO. 5:22-cr-40086-01-TC-RES**

**CECIL A. BROOKS (1),**

        **Defendant.**

### GOVERNMENT'S MEMORANDUM AND PROFFER IN RESPONSE TO THE DEFENDANT'S MOTION FOR PRETRIAL RELEASE

The United States of America, by and through undersigned counsel, responds to the defendant's Motion to Re-Open Detention Hearing Because of Changed Circumstances. (Doc. 69). The government opposes the defendant's request for pretrial release. The defendant Cecil Brooks (BROOKS), a violent and ruthless federally convicted drug trafficker, has been indicted on three federal felony charges. The charges involve a conspiracy count against civil rights in violation of 18 U.S.C § 241 and two counts of involuntary servitude in violation of 18 U.S.C. § 1584. The conduct alleged in the indictment involves the defendant and other co-defendants injuring, oppressing, threatening, and intimidating young women- including two underage girls identified in the indictment as Person 1 and Person 2- to be subjected to involuntary servitude that

included physical and sexual abuse. The defendant faces a potential sentence of life in prison for each of the three counts.

Detention is necessary because clear and convincing evidence establishes that no condition or combination of conditions will reasonably assure the safety of other people or the community. The government therefore seeks to detain the defendant pending trial.

### I. BACKGROUND

On November 10, 2022, a federal grand jury returned an indictment under seal charging the defendant BROOKS and three other co-defendants- LeMark Roberson (ROBERSON), Richard "Bone" Robinson (ROBINSON), and Roger Golubski (GOLUBSKI)- with three felony counts including one count of conspiracy against rights in violation of 18 U.S.C. § 241 and two counts of involuntary servitude in violation of 18 U.S.C. § 1584. All three counts charge that the defendant's conduct included aggravated sexual abuse and an attempt to commit aggravated sexual abuse and kidnapping and an attempt to commit kidnapping. The three charged counts are all crimes of violence, permitting the government to seek detention under 18 U.S.C. § 3142(f)(1)(A), and they are all punishable by up to life imprisonment, permitting the government to seek detention under 18 U.S.C. § 3142(f)(1)(B). (Doc. 1).

On November 28, 2022, after the indictment was unsealed and when the defendant was arraigned, the government moved that the defendant be detained. The defendant waived his right to a detention hearing. (Doc. 26). Prior to arraignment, the defendant was incarcerated in FMC Fort Worth in the custody of the Federal Bureau of Prisons

(BOP) serving a prison sentence. He had been convicted in *United States v. Brooks*, United States District Court, District of Kansas, Case No. 08-CR-20013-001 CM, of Conspiracy to Possess with Intent to Distribute 50 grams or more of Cocaine Based Within 1,000 Feet of a School. On July 21, 2009, he had been sentenced to 216 months imprisonment with ten years of supervised release to follow. During the defendant's incarceration, there was a period during the COVID pandemic that BOP placed the defendant under home confinement. While on home confinement in Kansas City, Kansas, the defendant was subject to certain restrictions and location monitoring. As will be outlined in more detail in the section II of the government's response, the defendant did not remain law-abiding while on home confinement which resulted in his placement being changed to FMC Fort Worth. On June 29, 2023, the defendant was released from BOP custody and now remains in custody of the U.S. Marshals solely for the above-captioned matter. There is no condition or combination of conditions to reasonably assure the safety of other people or the community, and therefore this Court can and should continue to detain the defendant pending trial.

II. **FACTUAL PROFFER OF THE EVIDENCE SUPPORTING DETENTION**

At a detention hearing, the government may present evidence by way of a proffer. 18 U.S.C. § 3142(f); *United States v. Lewis*, 769 F. Supp. 1189, 1193 (D. Kan. 1991). The government therefore proffers the following evidence set forth below and throughout this memorandum.

### A. <u>Details outlined in the Indictment</u> (Count One)

Count one of the Indictment provides important details pertaining to the manner, means, and overt acts attributed to the members of the conspiracy. (Doc. 1, 1- 8). Before, during, and after the date range of the conspiracy alleged in count one, the defendant BROOKS lorded over a potent and dangerous drug trafficking and sex trafficking operation in Kansas City, Kansas. The co-defendants ROBERSON, ROBINSON, and GOLUBSKI each played a role and assisted BROOKS in the successful running of his drug and sex trafficking operation.

One of BROOKS' primary locations to conduct his drug and sex trafficking operation was at Delevan Apartments ("Delevan") in Kansas City, Kansas. As outlined in count one, BROOKS, ROBERSON, and ROBINSON used physical beatings, sexual assaults, and threats of force to compel young women at Delevan to provide sexual services. GOLUBSKI, then a Detective with the Kansas City, Kansas Police Department, provided BROOKS and ROBERSON and ROBINSON protection from law enforcement investigation and intervention into criminal offenses.

BROOKS preyed upon vulnerable, troubled underage teenage girls, some of whom had recently been released from the state juvenile correctional facility. Many were runaways and/or came from broken homes and BROOKS moved these girls into DELEVAN plying them with clothes, shelter, and drugs all with the intent to use them in his criminal activities, including sex trafficking.

All three counts of the indictment speak to the level of abuse and terror that Person 1 and Person 2 were subjected to by BROOKS and the co-defendants. Throughout the investigation, the government has gone to special lengths to protect the identity and known whereabouts of Person 1 and Person 2. The basis and reasoning for this obvious. They live in constant fear of BROOKS and the other co-defendants and possible intimidation, retaliation, and worse. As underscored/discussed below their fears are not unfounded.

### B. D.M.

During the federal investigation into GOLUBSKI, BROOKS, ROBERSON, and ROBINSON, witnesses provided accounts of BROOKS being at the head of the drug and sex trafficking operation. Witnesses also provided examples of BROOKS' violence and ruthlessness in leading the operation.

One such example of BROOKS' violence and ruthlessness is referenced on page 3 of Pretrial Services criminal history report where BROOKS was charged in Wyandotte County, Kansas District Court in case number 95-CR-1746A with aggravated kidnaping and aggravated battery. D.M. was the alleged victim in the case. Prior to the alleged aggravated kidnapping and aggravated battery occurring, D.M. had attempted to broker a drug deal for approximately ½ kilo of cocaine where BROOKS fronted for D.M. the money for the transaction. D.M. was sold baking soda instead of cocaine and was without ability to pay back BROOKS for fronting the transaction. As a result, D.M. was lured

into a home controlled by BROOKS where he was tortured for hours in the home's basement by BROOKS and others who helped him.

D.M.'s arms and legs were bound, he was held at gunpoint, beaten over the head with a metal pan and possibly a gun, acid was poured on parts of his body, and pliers were used to snip his skin away from his body. D.M. was eventually released by BROOKS, told not to say anything to anyone about the kidnapping and torture or BROOKS would kill D.M. He was dropped off at Bethany Medical Center in Kansas City, Kansas.

Criminal charges were filed. During the pendency of the case, D.M. was shot three times outside of a residence while there with his girlfriend. D.M. believes someone who was involved with BROOKS tipped BROOKS off as to where D.M. was visiting before he was shot. He does not know with certainty who shot him. After D.M. identified those involved in his kidnap and torture, he was informed that BROOKS was going to kill him if he testified at trial. D.M. ultimately agreed to receive $5,000 dollars through a third party from BROOKS to not testify in the criminal case. D.M. recanted his statements to prosecutors and refused to cooperate further with the prosecution. D.M. agreed to take the money and change his testimony because he feared for his life from BROOKS. This demonstrates, albeit with circumstantial evidence of witness tampering, that BROOKS is savvy, especially in light of the physical violence and torture described by the victim. As reflected in page 3 of the Pretrial Services criminal history report, the case was dismissed.

### C. Conduct while on home confinement in BOP custody

As previously mentioned, the defendant was placed on home confinement while in BOP custody during a portion of the COVID pandemic. During Brooks' home confinement, he was living at 1141 N. 32nd Street in Kansas City, Kansas while still in BOP custody. BROOKS' home confinement started in approximately June of 2020, and it was based on his medical condition and the COVID-19 guidelines and the First Step Act of 2018. He was required to wear an ankle monitor used to track his physical location and ensure his compliance with conditions of release.  In October 2021, the BOP moved BROOKS to a residential reentry facility due to false statements concerning his whereabouts when compared to GPS data.  The BOP subsequently moved BROOKS to Core Civic Leavenworth and eventually to FMC Fort Worth.

On October 12, 2021, the FBI executed a search warrant at 1141 North 32nd Street, Kansas City, Kansas (KS) 66102 to search for evidence of drug trafficking. Part of the basis for the search warrant was information received from confidential informants that had observed significant traffic at BROOKS' residence that was consistent with drug trafficking. During the investigation and prior to the execution of the search warrant, pole cameras were installed by FBI agents. The pole camera surveillance revealed numerous individuals stopping at the residence in vehicles, or on bicycles, or on foot, on a regular basis for minutes at a time before departing. The high volume of traffic described typically occurred between the early afternoon hours and continued into the early morning hours. However, visitors were observed at all hours of the day.  The individuals were observed through pole camera video surveillance approaching the front side of the

residence before being lost from view, and then returning from the front side of the residence to depart minutes later. This activity primarily occurred while BROOKS was present in or around the residence. Sporadically, individuals also visited the home at a time when BROOKS was not present. Some of the pole camera surveillance revealed BROOKS in what appeared to be hand-to-hand drug transactions.

When the search warrant of the residence was executed, BROOKS was not present, though other individuals were located at the residence, including his son Damian Brooks and David Brooks, Cecil Brooks' father. David Brooks identified the southeast bedroom as belonging to Cecil Brooks. David Brooks also informed Agents he possessed an inoperable shotgun which was stored in his bedroom, the northwest room of the residence. The shotgun was later located and seized by Agents during the search. During a search of the southeast bedroom, investigators located near the bed, and concealed behind a metal vent, a model 1911 .45 caliber semi-automatic handgun, serial number 2121926, manufactured by Ithaca Gun Co. The handgun was loaded with a magazine of eight .45 caliber rounds. A receipt from Little Joe's Pawn and Gun, 7907 State Avenue, Kansas City, KS 66112, from March 2021, was located with the handgun. The receipt was made out to Damian Brooks, however, the description and serial number on the receipt did not match the handgun found. Also found and seized in a jacket pocket in the southeast bedroom was a firearm suppressor manufactured by SilencerCo. The bedroom the firearm and silencer were in was attributed to BROOKS.

The FBI obtained additional search warrants of BROOKS, Damian Brooks, and David Brooks to obtain known swabs of their DNA to compare to swabs off the firearm

and silencer. According to the lab report, DNA results of the firearm indicate that BROOKS can be excluded as a contributor but not Damian. According to the lab report, DNA results of the silencer indicate that BROOKS has limited support for exclusion and Damian has very strong support for inclusion.

In addition to the firearm and the suppressor, the FBI seized multiple containers which held residual amounts of a white powdery substance believed to be illegal narcotics. These containers were found in different rooms, including the southeast bedroom attributed to BROOKS.  The FBI also photographed and documented items believed to be consistent with manufacturing and distribution of illegal narcotics, to include multiple microwaves, large amounts of razor blades, and plastic bags with the corners torn away. The FBI did not find significant amounts of illegal narcotics or significant amounts of currency during the search of 1141 N 32nd Street, Kansas City, Kansas.

The defendant has demonstrated a failure to comply with any conditions previously set as evidenced by his behavior during his home confinement incarceration.

### D. **BROOKS' criminal history**

BROOKS' has a long history of sex crimes. The charged conduct isn't an aberration nor is the length of time since the dates of the charged conduct any comfort. At age 23, BROOKS' received diversion for a child sex crime. In 1985, he was placed on an 89-month term of diversion. During the time of his supervision, a motion to revoke was filed and he eventually completed diversion in 1993. Regardless that the date of arrest

and commencement of diversion was in 1985, it is very troubling that as early as the mid 1980's the defendant demonstrated a proclivity for sexually abusing minor children. BROOKS also has subsequent state charges for deadly weapon possession, drugs, and the federal conviction for drug trafficking.

As demonstrated by the facts of D.M.'s encounter with BROOKS, coupled with the protection of corrupt police detective co-defendant GOLUBSKI, BROOKS' criminal history is much worse than what is represented on paper. It only reads this way because his enormous reputation for violence quelled those who would dare oppose him and his police protection made him nearly untouchable.

### III.   LEGAL ANALYSIS

A grand jury found probable cause that the defendant committed the crimes charged in the indictment. The three charged counts are all crimes of violence, permitting the government to seek detention under 18 U.S.C. § 3142(f)(1)(A), and they are all punishable by up to life imprisonment, permitting the government to seek detention under 18 U.S.C. § 3142(f)(1)(B).

An analysis of the factors to be considered under 18 U.S.C. § 3142(g) reveals that there is clear and convincing evidence that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f). Accordingly, the defendant should be detained pending trial.

### A. The Nature and Circumstances of the Offense Charged

The first factor to be considered under Section 3142(g) is "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim or a . . . firearm . . . ." 18 U.S.C. § 3142(g)(1). This factor weighs heavily in favor of detention because the defendant committed crimes of violence[1] on underage girls. In particular, the defendant ruthlessly lorded over a drug and sex trafficking organization that maximized its ability to prey upon and brutalize underage girls to facilitate his drug and sex trafficking.

Further demonstrating the danger he poses to the community, the defendant used his power and his ferocity, along with his co-defendants and corrupt law enforcement to hold these women against their will, use them like chattel, and threaten to injure, maim, or kill any who thought otherwise.

Moreover, considering the nature and circumstances of the offense also requires the Court to weigh the possible penalty the defendant faces upon conviction. *See United States v. Padilla*, No. 09-10130-01-EFM, 2009 WL 4571847 at *3 (D. Kan. Dec. 3, 1999). The sentence the defendant faces if convicted reflects the seriousness of his crimes. The defendant faces life imprisonment on each one of the charges, all of which allege the aggravated sexual abuse and attempted aggravated sexual abuse enhancements,

---

[1] All three counts charge the defendant with a violation of the law that includes aggravated sexual abuse. Courts look to 18 U.S.C. § 2241 and case law for the definition of "aggravated sexual abuse." Section 2241 defines "aggravated sexual abuse" as the defendant "knowingly caus[ing] another person to engaged in a sexual act- (1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping." 18 U.S.C. § 2241(a). Because, by definition, aggravated sexual abuse has an element the use, attempted use, or threatened use of physical force, 18 U.S.C. § 16, it is a crime of violence. *See United States v Muskett*, 970 F.3d 1233, 1238-1241 (10th Cir. 2020) (defining "crime of violence").

and his advisory sentence under the United States Sentencing Guidelines for each of those counts is likewise life imprisonment.

### B. The Weight of the Evidence Against the Defendant

The second factor to be considered under Section 3142(g) is "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(2). This factor also weighs in favor of detention. Person 1 and Person 2 have bravely come forward, along with several other witnesses, who corroborate each other's accounts, and these accounts demonstrate the depth of the conspiracy and callousness of the violent crimes perpetrated upon so many young girls and women.

### C. The Defendant's History and Characteristics

The third factor to be considered under Section 3142(g) is "the history and characteristics of the [defendant], including—(A) the [defendant's] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). This factor also weighs in favor of detention.

This defendant has arrests for crimes of child sexual assault and violence in his past. He has arrests for weapons violations and drugs. He has a federal conviction for drug trafficking. He also has been tied to drug trafficking while he was serving out a portion of his federal prison sentence while on home confinement.

The defendant is as dangerous, if not *more* dangerous—not less—today. Although the crimes Brooks is alleged to have committed occurred some time ago, he has been unable to not commit crimes even while incarcerated. With the prospect of a life sentence hanging above him, the defendant's behaviors in the past establish that he will not hesitate to threaten, intimidate, harm, injure, attempt to kill, bribe, shakedown, or payoff anyone who might stand in his way. The potential sentence of life imprisonment faced by the defendant and the defendant's use of corrupt law enforcement in the past—apply both to dangerousness and to risk of flight or failure to appear and weigh heavily in favor of detention.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

The final factor to be considered under Section 3142(g) is "the nature and seriousness of the danger to any person or the community that would be posed by [the defendant's] release." 18 U.S.C. § 3142(g)(4). Analysis of this factor shows that the defendant's pretrial detention is necessary. Clear and convincing evidence establishes that no condition or combination of conditions will reasonably assure the safety of other people or the community.

The defendant's victims and many of the government's witnesses live in fear because BROOKS has repeatedly and consistently demonstrated his willingness to engage in violence and any other criminal means that he deems effective to stop others from holding him accountable. The pattern of evidence establishing the defendant's

threats and his dangerousness is overwhelming. Here, the defendant's dangerousness is further heightened because he is facing a potential sentence of life in prison for his crimes

## IV. CONCLUSION

Based upon the nature and circumstances of the offense, the weight of the evidence against the defendant, the defendant's history and characteristics, and the nature and seriousness of the danger to others and the community, the government respectfully moves this Court to order that the defendant be detained pending trial because there is no condition or combination of conditions that will reasonably assure the safety of other people or the community if he were released.

Respectfully submitted,

KATE E. BRUBACHER
UNITED STATES ATTORNEY

By: /s/ *Stephen A. Hunting*
Stephen A. Hunting
Assistant United States Attorney
District of Kansas
444 Quincy St., Suite 290
Topeka, Kansas 66683
Ph: (785) 295-2850
Fax: (785) 295-2853
Email: stephen.hunting@usdoj.gov
Ks. S. Ct. No. 21648