**In the United States District Court
for the District of Kansas**

———————

Case No. 22-cr-40086-TC

———————

UNITED STATES OF AMERICA,

*Plaintiff*

v.

CECIL A. BROOKS, ET AL.,

*Defendants*

———————

**MEMORANDUM AND ORDER**

    Cecil Brooks, Lemark Roberson, Richard Robinson, and Roger Golubski are charged with conspiring to deprive Person 1 and Person 2 of their right to be free from involuntary servitude, in violation of 18 U.S.C. § 241. Doc. 1. Defendants are also charged with holding either or both Person 1 and Person 2 to involuntary servitude for a term, in violation of 18 U.S.C. § 1584. *Id.* The Government moves to admit other-victim evidence from seven individuals. Doc. 102. For the following reasons, the Government's motion is granted.

**I**

**A**

    Evidence of an individual's character is almost always inadmissible because it introduces the possibility that a jury will convict a defendant because of his or her nature rather than the facts. *Michelson v. United States*, 335 U.S. 469, 475–76 (1948); *see also* Fed. R. Evid. 404(b)(1). But there are exceptions to this general rule.

    **1**. Fed. R. Evid. 413 is one exception. *United States v. Benally*, 500 F.3d 1085, 1089 (10th Cir. 2007). It provides that "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault." Fed. R. Evid. 413(a). Such evidence "may be considered on

1

any matter to which it is relevant." *Id.* And it may be admitted to prove an individual's propensity to commit sexual assault. *United States v. Batton*, 602 F.3d 1191, 1197 (10th Cir. 2010).

There are four prerequisites for admitting evidence under Rule 413. First, the defendant must be accused of a crime involving sexual assault. *Benally*, 500 F.3d at 1090. Second, the evidence of the defendant's other acts must also involve sexual assault. *Id.* Third, the evidence must be relevant. *Id.* Fourth, a district court must make a preliminary finding that a jury could reasonably find "by a preponderance of the evidence that the 'other act[s]' occurred." *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998), *opinion clarified*, No. 96-2285, 1998 WL 133994 (10th Cir. Mar. 25, 1998).

Evidence that satisfies the four prerequisites is nevertheless subject to exclusion if it fails the balancing test laid out in Rule 403. *Enjady*, 134 F.3d at 1431. Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, delay, or if it is needlessly cumulative. *Batton*, 602 F.3d at 1198.

There are special considerations in applying Rule 403 to evidence admissible under Rule 413. In the Tenth Circuit, four overarching issues must be considered: "how clearly the prior act has been proved," "how seriously disputed the material fact is," "whether the government can avail itself of any less prejudicial evidence," and "how probative the evidence is of the material fact it is admitted to prove." *Benally*, 500 F.3d at 1090; *see also Enjady,* 134 F.3d at 1433 (suggesting that Rule 413 would be unconstitutional without the guardrails of special Rule 403 factors). When considering how probative the other-acts evidence is, the Tenth Circuit directs courts to consider "the similarity of the prior acts and the charged acts," "the time lapse between the other acts and the charged acts," "the frequency of the prior acts," "the occurrence of intervening events," and "the need for evidence beyond the defendant's and alleged victim's testimony." *Benally*, 500 F.3d at 1090–91; *see also United States v. Guardia*, 135 F.3d 1326, 1331 (10th Cir. 1998). And, when considering the prejudicial dangers, a court must ask "how likely it is such evidence will contribute to an improperly-based jury verdict," whether "such evidence will distract the jury," and "how time consuming it will be to prove the prior conduct." *Benally*, 500 F.3d at 1090.

**2**. Rule 404(b)(2) is another exception to the general rule that evidence of bad character is inadmissible. Rule 404(b)(2) specifies that

2

evidence of any other crime, wrong, or act may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *See United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001) (noting that this list is not exhaustive).

The analysis differs depending on whether the evidence of other bad acts is intrinsic or extrinsic. *United States v. Piette*, 45 F.4th 1142, 1155 (10th Cir. 2022). Extrinsic evidence is subject to analysis under Rule 404. *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011). But evidence that is intrinsic to a charged crime is not subject to Rule 404(b)'s prohibition on prior acts evidence. *United States v. Gallegos*, ___ F.4th ___, 2024 WL 3643496, at *20 (10th Cir. Aug. 5, 2024); *United States v. Murry*, 31 F.4th 1274, 1290–91 (10th Cir. 2022) (citation omitted). It is, however, still subject to Rule 403 balancing. *Piette*, 45 F.4th at 1155.

The "threshold inquiry" in admitting extrinsic evidence of similar acts under Rule 404(b)(2) is that the "evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988); *see also United States v. Henthorn*, 864 F.3d 1241, 1248 (10th Cir. 2017). The party seeking admission must specifically articulate the relevance and proposed purpose of the evidence; the inference that the defendant has the propensity to commit the crime charged cannot play a role in the purpose proposed. *United States v. Commanche*, 577 F.3d 1261, 1267 (10th Cir. 2009). If other-acts evidence is admitted under this rule, and the defendant so requests, a court must issue a limiting instruction cautioning the jury "to consider the evidence only for the limited purposes for which it is admitted and not as probative of bad character or propensity to commit the charged crime." *United States v. Mares*, 441 F.3d 1152, 1157 (10th Cir. 2006). Like Rule 413 evidence, Rule 404(b)(2) evidence is subject to Rule 403, but there are no special factors to apply. *Id.*

**B**

The Indictment advances three counts. Doc. 1.[1] All center on the alleged involuntary servitude of Persons 1 and 2. Count 1 alleges a conspiracy between the four defendants. Doc. 1 at 1–8. Count 2 alleges that Brooks, Roberson, and Robinson "held Person 1 to invol-

---

[1] All document citations are to the document and page number assigned in the CM/ECF system.

3

untary servitude for a term." *Id.* at 9. Count 3 alleges that Brooks, Roberson, and Golubski held Person 2 in involuntary servitude. *Id.*

Person 1 and Person 2 allegedly lived at "Delevan, an apartment complex in Kansas City, Kansas." Doc. 102 at 3, 6–7. So did several other young women, whose testimony the Government wants to offer in this case. *See generally* Doc. 102. Specifically, the Government seeks to admit testimony from seven other alleged victims, referred to by the parties as "OV" A through G. *Id.* Most of these individuals will testify to, among other things, alleged sexual assaults and other conduct experienced while at the Delevan complex. These allegations begin in approximately 1990 and continue for roughly a decade. *Id.* at 1, 13–15, 19–20, 23. Three of the women that will testify did not necessarily live at Delevan. *Id.* at 12, 23–24. But they will allege that they were sexually assaulted by Golubski during the same period.[2] *Id.*

The Government provided detailed summaries of the proposed testimony, and implies that this testimony will be consistent with FBI 302 Reports memorializing investigative interviews of OVs A through G. Doc. 102 at 12–24, 31. Each defendant was permitted to respond to the Government's arguments separately. But a consolidated hearing was held on July 25, 2024. *See* Doc. 127.

## II

The Government seeks to admit testimony from seven alleged OVs, labeled A through G. Doc. 102. Certain testimony from OV-B, OV-C, OV-E, and OV-F is admissible as intrinsic to the charged crimes—a conclusion the defendants largely concede. Some of the OVs' testimony about uncharged acts of sexual assault allegedly perpetrated by Golubski and Brooks is also admissible under Rule 413. Finally, OV-B, OV-C, and OV-F offer testimony that is admissible under Fed. R. Evid. 404(b) to show Defendants' alleged *modus operandi*. Accordingly, the Government's motion to admit evidence, Doc. 102, is granted.

---

[2] Two of them, OV-A and OV-B, offered this testimony in another of the Government's cases against Golubski. Doc. 102 at 12 n.2, n3; *see also United States v. Golubski*, No. 22-CR-40055, 2024 WL 1199256, at *2 (D. Kan. Mar. 20, 2024). And the third, OV-G, is an alleged victim in that case. Doc. 102 at 23 n.6.

## A

The Government argues that the testimony of four alleged victims—identified as OV-B, OV-C, OV-E, and OV-F—is admissible because it is intrinsic to the crimes charged in the Indictment. Doc. 102 at 12–13, 25.[3] Because their proposed testimony is related to the scope and nature of the charged conspiracy, the specified testimony is admissible.

Other-act evidence is intrinsic "when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011). (citation omitted). In other words, evidence is intrinsic if it was "part of the scheme for which a defendant is being prosecuted." *United States v. Johnson*, 42 F.3d 1312, 1316 (10th Cir. 1994); *see also Murry*, 31 F.4th at 1290–91 (citation omitted) (upholding admission of prior-act evidence that was "germane background information directly connected to the factual circumstances of the alleged conspiracy"). Such is often the case when the other acts "occurred within the same time frame as the activity in the conspiracy being charged." *United States v. Cushing*, 10 F.4th 1055, 1075 (10th Cir. 2021).

The proposed testimony of OV-B, OV-C, OV-E, and OV-F address Golubski's presence and conduct at Delevan. OV-B, for example, will testify that "[i]n the mid-1990s, [she] spent time at Delevan, where she observed … Golubski visit Brooks's office on multiple occasions." Doc. 102 at 13. Similarly, OV-C says she lived at Delevan and "observed Golubski there regularly." Doc. 102 at 14. She will testify she saw Brooks hand envelopes of money to "runners," who would take the envelopes to Golubski. *Id.* And she will say that she saw Golubski go inside Brooks's Delevan office "so regularly that [she] assumed he had a key." *Id.*

This theme continues with OV-E, who was at Delevan while Person 1 lived there, though "sometimes [OV-E] left and came back because of her drug addiction." Doc. 102 at 19. OV-E will testify about Person 1's status at Delevan, seeing Golubski "weekly at Delevan," and being asked to leave Brooks's office when Golubski visited. *Id.*

---

[3] In the alternative, the Government argues that this evidence is admissible via Rule 404(b). Doc. 102 at 12–13 n.4.

She will also testify about Brooks's violent conduct and seeing locks both inside and outside his office door. *Id.*

Finally, OV-F lived at Delevan, heard what sounded like violence against other residents, and saw a "'hefty' white male police officer … go inside Brooks's office alone." Doc. 102 at 20. She also describes the relationship between Brooks, Robinson, and Roberson. *Id.* at 20–21.

All this evidence is intrinsic to the conspiracy charge, Doc. 1 at 1–8, and neither Brooks, Golubski, nor Roberson dispute that point. *See generally* Docs. 116, 120 & 121.[4] Robinson, for his part, argues that OV-F's proposed testimony is not intrinsic. Doc. 119 at 2, 5. But Robinson is charged with conspiracy, and the portions of OV-F's testimony at issue describe the nature of his relationship with other members of the conspiracy. His argument is rejected because evidence of a preexisting relationship that might facilitate the agreement element of a conspiracy charge is classic intrinsic evidence. *See United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015) (noting that the Tenth Circuit "regard[s] evidence as intrinsic when it … [is] a necessary preliminary to [a] charged conspiracy"); *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011); *see also United States v. Majeed*, No. 21-20060, 2024 WL 992884, at *8 (D. Kan. Mar. 6, 2024) (concluding, in a Section 1589 prosecution, that evidence of physical abuse was intrinsic to compelled labor charges).

**B**

The Government also seeks to admit each of the OV's testimony through Rule 413. Three OVs allege that Golubski assaulted them (OV-A, OV-B, and OV-G), and another three allege that Brooks assaulted them (OV-C, OV-E, and OV-F). The final witness, OV-D, alleges that both Golubski and Brooks assaulted her. Each OV's testimony is admissible under Rule 413 since that rule's prerequisites are satisfied and the OVs' testimony is not excluded by the applicable Rule 403 analysis.

---

[4] Brooks's objection that OV-E's testimony is unreliable and irrelevant, Doc. 120 at 11, and Roberson's argument that OV-F's testimony does not satisfy a legitimate Rule 404(b) purpose, Doc. 121 at 2, are addressed *infra*.

1

Golubski does not dispute that his alleged uncharged assaults are admissible under Rule 413, so the only dispute is whether that testimony should be excluded under Rule 403. *See* Doc. 116 at 5–7. Generally, Rule 403 excludes relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, delay, or the evidence is needlessly cumulative. *Batton*, 602 F.3d at 1198. But, since the Government's evidence is admissible in the first instance under Rule 413, there are four overarching special considerations. *See* I.A., *supra*; *Benally*, 500 F.3d at 1090.

Golubski argues that one special consideration—"how clearly the prior act has been proved"—cuts against the Government. Doc. 116 at 7; *Batton*, 602 F.3d at 1198. This is so, he says, because "[t]he sole 'proof' the government can offer … is the testimony of the accusers." Doc. 116 at 7. To be sure, the Government lacks overwhelming proof of the allegations, such as a prior conviction for the acts. *See* Doc. 122 at 8. But it has other proof: statements to the FBI (from 2001, in OV-F's case), Roberson's recent statements to the FBI, and consistency across the alleged victims' accounts. *Id.* These things dampen the effect of Golubski's argument. *See United States v. Fred*, No. CR 05-801, 2006 WL 4079618, at *1 (D.N.M. Dec. 1, 2006) (considering "FBI 302 Form[s]" evidence of uncharged other-acts); *see also United States v. Golubski*, No. 22-CR-40055, 2024 WL 1199256, at *4 (D. Kan. Mar. 20, 2024). At base, there is enough evidence to support "a preliminary finding that a jury could reasonably find by a preponderance of the evidence that the 'other act[s]' occurred." *Enjady*, 134 F.3d at 1433.

Golubski mentions the second special consideration, which weighs how seriously disputed the fact the other-act evidence would prove is. *Benally*, 500 F.3d at 1090; Doc. 116 at 6. In his view, the dispute is serious. *See* Doc. 116 at 5–6. But that fact favors the government: The more serious the dispute, the greater the need for Rule 413 evidence. *See United States v. Sturm*, 673 F.3d 1274, 1286 (10th Cir. 2012); *see also Golubski*, 2024 WL1199256, at *5.

The third special consideration examines the probative value of the proposed Rule 413 evidence. *Benally*, 500 F.3d at 1090. The evidence offered here of uncharged assaults that Golubski allegedly committed is probative because it explains Golubski's potential role in the charged conspiracy. *Contra* Doc. 116 at 9 (arguing that other allegations of assault are not probative because Golubski need not

7

himself have committed acts of aggravated sexual abuse). It also, as the Government argues, tends to corroborate some of Person 2's specific allegations. Doc. 122 at 9. Simply put, the other acts are similar to the charged acts—and those similarities persist even though Person 2 was allegedly assaulted at Delevan and the OVs were allegedly assaulted elsewhere. *Compare* Doc. 1 at 9–10, *with* Doc. 102 at 12–13, 23–24; *Benally*, 500 F.3d at 1090–91. Most significantly, Golubski allegedly relied on his status as a police officer when pursuing victims and, while not a necessary element, is probative of the particular role he played in the conspiracy. *See* Doc. 102 at 23 (alleging that OV-G will testify "Golubski showed her his badge"); Doc. 122 at 9.

Golubski disagrees with the foregoing conclusion. In effect, he says the proposed evidence is probative of irrelevant facts, since "it is not essential to either charge that the sexual abuse was perpetrated" by him specifically. Doc. 116 at 8–9. That is a problem, in his view, because the Rule 413 evidence is of individual sexual assaults. *See id.*

That argument is unavailing. Whether Golubski committed an act of aggravated sexual abuse is material to the Section 1584 and Section 241 charges. Each statute includes a penalty enhancement. The enhancement applies if the primary actus reus—knowingly or willfully holding a person in involuntary servitude and conspiracy to deprive an individual of rights respectively—includes "aggravated sexual abuse." 18 U.S.C. § 1584; 18 U.S.C. § 241. Thus, the Government's evidence is probative of whether Golubski is subject to the penalty enhancement. In short, testimony that Golubski assaulted several OVs makes it more likely that if he committed a Section 241 and Section 1584 crime, his commission involved acts of aggravated sexual assault. *See* Doc. 1 at 2, 9–10; *United States v. Begay*, 497 F. Supp. 3d 1025, 1062–63 (D.N.M. 2020); *see also United States v. Perrault*, 995 F.3d 748, 767–68 (10th Cir. 2021).

Moreover, testimony that Golubski has assaulted others makes it more likely that he conspired to deprive individuals of their rights under Section 241 and that he held Person 2 in involuntary servitude. After all, the Government alleges those acts involved aggravated sexual abuse. This logic depends on a propensity inference, but that is appropriate in this context. *United States v. Von Behren*, 822 F.3d 1139, 1146 (10th Cir. 2016).

Golubski also argues that the other act evidence is not very probative because none of the other acts involve conduct occurring at

8

Delevan or organized prostitution. Doc. 116 at 10. And if that distinction is unpersuasive, he says, any "similarities … are diminished by the likely impact of the widely publicized McIntyre litigation."[5] *Id.* Golubski has unsuccessfully raised very similar arguments elsewhere, *Golubski*, 2024 WL 1199256, at *6, and they are unpersuasive in this case for the same reasons. The OVs propose testimony about events that are not identical to those charged in the Indictment. *See generally* Doc. 102. Even so, the conduct is similar enough to be probative. *See Golubski*, 2024 WL 1199256, at *6 (noting that "similarities" may "overwhelm … distinctions"); *cf. United States v. Perrault*, 995 F.3d 748, 767 (10th Cir. 2021) (finding, in the context of Rule 414, that some minor differences among alleged victims are immaterial).

Probative value is only one half of the third special consideration. The other half is prejudicial danger. That inquiry directs a court to examine some specific factors: "how likely it is such evidence will contribute to an improperly-based jury verdict," whether "such evidence will distract the jury," and "how time consuming it will be to prove the prior conduct." *Benally*, 500 F.3d at 1090.

None of those considerations overwhelm the probative value of the Government's other-victim evidence related to Golubski. This evidence will take time to present, but not so much time that it should be excluded. *See Golubski*, 2024 WL 1199256, at *6. Nor will it unduly focus the trial on Golubski, given that the Government's other-victim evidence is split between Golubski and Brooks. *Contra* Doc. 116 at 14; *see* Doc. 122 at 11.

Golubski's argument that the jury will be overwhelmed by evidence of uncharged acts fares similarly. Rule 413 presumes that juries can handle this sort of evidence, and there is no reason to think that Golubski's case is an exception. *See Golubski*, 2024 WL 1199256, at *6. And there is little risk of impermissible prejudice stemming from generalizations about Golubski's character. *Contra* Doc. 116 at 16. Such inferences are permitted in the narrow context of Rule 413. *Enjady*, 134 F.3d at 1431.

---

[5] For more on the McIntyre litigation, *see* Eduardo Medina, *Ex-Police Detective Suspected of Preying on Black Women Faces U.S. Charges*, N.Y. Times (Sept. 15, 2022), https://www.nytimes.com/2022/09/15/us/kansas-police-officer-sexual-assault.html.

That leaves the fourth special consideration, which is the Government's need for Rule 413 evidence. *Benally*, 500 F.3d at 1090. Golubski argues that "[t]he government does not need to present this unduly prejudicial evidence to make its case." Doc. 116 at 12. He contends that where, as here, "a defendant does not claim that his victim consented," the ordinary rationale for Rule 413 evidence weakens. *See id.* at 12–13. This argument is unconvincing. Other victim evidence is admissible "precisely because [it] is more probative of propensity than the testimony of … principal victims alone." *Golubski*, 2024 WL 1199256, at *5. That rationale exists just as strongly in a case where the defendant does not claim consent, but disputes that the act occurred at all. And the Government must avail itself of that option; alternative evidence has degraded over time. Doc. 102 at 34; *see also Golubski*, 2024 WL 1199256, at *5.

**2**

The Government also proposes to offer the testimony of OV-C, OV-D, OV-E, and OV-F pursuant to Rule 413 against Brooks. Doc. 102 at 15, 18, 19–20, 21. Brooks, like Golubski, does not dispute that this evidence is admissible under Rule 413. *See generally* Doc. 120. Instead, he argues that it should be excluded by the special Rule 403 analysis applicable to Rule 413 evidence. He is incorrect.

First, he says, "[n]one of [the] alleged acts have been clearly proven." Doc. 120 at 9; *Benally*, 500 F.3d at 1090 (listing clarity of proof as a special consideration). As with the Rule 413 evidence offered against Golubski, the Government lacks overwhelming evidence of the uncharged prior acts, such as a conviction, but it will present evidence "memorialized in FBI 302 reports," as well as more recent evidence (like a statement Roberson made to the FBI in 2022). Doc. 102 at 31. At base, there is enough evidence to support "a preliminary finding that a jury could reasonably find by a preponderance of the evidence that the 'other act[s]' occurred." *Enjady*, 134 F.3d at 1433.

Second, Brooks says that the proffered testimony does not contain "material facts relating to the charges of the Indictment." Doc. 120 at 9. Essentially, he argues the probative value of the testimony is low. *See id.*; *Enjady*, 134 F.3d at 1433. But the opposite is true: The Government offers evidence of assaults against women with many of the same traits as Persons 1 and 2. *See* Doc. 102 at 32. These women allege acts much like the ones alleged in the indictment. *Compare* Doc. 102 at 15, 18–21, 32 *with* Doc. 1 at 4–8. Both sets of acts occurred in roughly the same time frame, *see* Doc. 102 at 32–33, and they were

10

relatively frequent in that period, *id.* These factors indicate that the probative value of the proposed testimony is high, and thus favor admission of that evidence. *Benally*, 500 F.3d at 1090–91. Other considerations, *see* Section II.B.1, *supra*, further bolster the probative value of this evidence.

Third, Brooks says the testimony offered against him is "highly contested." Doc. 120 at 9; *Benally*, 500 F.3d at 1090 (listing the seriousness of a dispute over a material fact as a special consideration). None of those statements concern actions that "took place in this century," he says, and they lack details. *See* Doc. 120 at 9. But the statements are not so old—or so vague—that they must not be admitted. They relate to conduct alleged to have started in 1995, at least with respect to OV-C. Doc. 102 at 15. And they include sufficient detail, for example, that Brooks would bring OV-C to his office and take a series of specific actions before assaulting her. *Id.* The OV testimony informs one side of a vigorous dispute over the truth of Person 1 and Person 2's assault allegations. Again, that suggests that the evidence should be admitted, since "[t]he more seriously disputed the material fact, the more heavily this factor weighs in favor of admissibility." *Sturm*, 673 F.3d at 1286; *see also Golubski*, 2024 WL 1199256, at *5.

Fourth and finally, Brooks argues that the Government does not need the other-victim testimony to make its case. Doc. 120 at 10. "[T]he weakness of the government's case," he says, is no "basis for admission of additional suspect evidence." *Id.* Except that supposed weakness is a function of the alleged crimes. In the Government's view, Brooks conspired with law enforcement to violate Person 1 and Person 2's rights, meaning potential witnesses and victims may have been reluctant to come forward at the time of the conduct. Doc. 102 at 33–34. It also means that time-sensitive evidence, such as contemporaneous DNA evidence, is categorically unavailable for reasons unrelated to the strength or weakness of the Government's case. *Id.* at 34. Moreover, those alleged to have witnessed the charged acts are, for the most part, Brooks's co-defendants. *See* Doc. 1 at 2–8. Such allegations complicate the Government's ability to rely on less prejudicial evidence and suggest that this factor weighs in its favor. *Golubski*, 2024 WL 1199256, at *5.

## C

The Government proposes testimony, relying on Rule 404(b), of uncharged wrongs implicating some or all the defendants. Such evi-

11

dence is admissible when it is relevant, proposed for a proper purpose under Rule 404(b)(2), and not subject to exclusion based on Rule 403. *United States v. Mares*, 441 F.3d 1152, 1156–57 (10th Cir. 2006). The proposed testimony of OV-B, OV-C, and OV-F satisfies those requirements.

### 1

OV-B's proposed testimony is relevant. The Government alleges that Brooks intimidated women allegedly held at Delevan, either through physical violence or by informing them of violence committed against other women. *See* Doc. 1 at 5. OV-B's proposed testimony tends to make that allegation more likely, since she will describe a specific time that Brooks was violent towards her. Doc. 102 at 13. More importantly, she will describe how and why that happened. Doc. 102 at 39; *see also United States v. Roberts*, 185 F.3d 1125, 1142 (10th Cir. 1999) (affirming the admission of evidence showing "a common scheme of sexually abusive behavior" and thus "the defendant's knowledge he could, by virtue of his position, abuse young female employees without fear of reprisal").

Still, relevance alone is not enough. OV-B's proposed testimony, like all Rule 404(b)(2) testimony, must be "probative of a material issue other than character." *Huddleston*, 485 U.S. at 686; *see Henthorn*, 864 F.3d at 1248. And it is. For instance, it is probative of the degree of interdependence between Brooks and Golubski, which is relevant to the Section 241 conspiracy charges. *See, e.g.*, Doc. 102 at 38. Brooks says it is not because her testimony describes conduct "alleged to have taken place during the time of the alleged conspiracy." Doc. 120 at 6. As a result, he argues, it cannot show preparation or a plan, leaving only an impermissible character inference. *Id.* But Rule 404(b)'s list of "[p]ermitted [u]ses" is not exhaustive. *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001). Any non-prohibited purpose suffices. *See id.* And the Government identifies one: It offers OV-B's testimony to show Brooks's unique method of "grooming teenage girls," not his character. *See* Doc. 102 at 39.

The Government calls that theory "preparation and plan," but the label is less important than the substance. In effect, the Government argues that Brooks had a signature approach. That approach allegedly involved using standard methods to identify vulnerable teenage girls of a certain age and ethnicity such and then exploit them through means such as isolating the individual in a secluded area or room. *See* Doc. 102 at 39. These methods were distinctive enough

that they approximate a *modus operandi. See Golubski*, 2024 WL 1199256, at *8. Evidence that the accused "proceeded by a unique *modus operandi*" is admissible to prove the identity of the perpetrator of the charged acts. *United States v. Smalls*, 752 F.3d 1227, 1238 (10th Cir. 2014).

The Tenth Circuit has upheld the admission of evidence on *modus operandi* grounds under Rule 404(b)(2) in cases where the past acts had a "signature quality," even where those acts were not identical to the charged acts. *United States v. Shumway*, 112 F.3d 1413, 1420 (10th Cir. 1997) (e.g., the fact that thefts occurred at the same remote address and required specialized skill). That result is appropriate here. OV-B alleges acts that, while not identical to the charged acts, are significantly similar. The Indictment alleges that Brooks targeted "young girls who were runaways" or "from broken homes," and those recently released from a specific juvenile correctional facility. Doc. 1 at 3. These individuals were then allegedly subject to intermittent violence or threats of violence, sometimes involving household objects. *Id.* at 2, 5–6. This is the same process described, at least in part, by OV-B. Doc. 102 at 13. She would testify that Brooks targeted her in many of the ways that the Government alleges he targeted Person 1 and Person 2, then treated her in a notably similar way. *Compare id.*, *with* Doc. 1 at 6–7. This testimony would not simply paint Brooks as a bad person. Rather, it would attempt to show that he had a distinctive method of recruiting young victims, *see* Doc. 122 at 14, and ensuring their continued participation in a prostitution scheme via specific kinds of public violence. It is therefore admissible under Rule 404(b). *See United States v. Gutierrez*, 696 F.2d 753, 755 (10th Cir. 1982) (concluding that an alleged "other crime" had a signature quality where, in both cases, the get-away driver used her children as cover); *United States v. LaFlora*, 146 F. App'x 973, 975 (10th Cir. 2005) (noting the Tenth Circuit's consistent position that *modus operandi* evidence may be submitted under Rule 404(b)).

Rule 403 does not change that conclusion. Brooks argues that "the [G]overnment can't simply claim that the case they brought … is so speculative[] that they can only prove their claims … using additional speculative statements." Doc. 120 at 7. But as explained, OV-B's testimony is highly probative of Brooks's methods and alleged *modus operandi*. And it accomplishes that result without suggesting a decision on improper bases. *See Tan*, 254 F.3d at 1211 (listing sources of unfair prejudice and noting that "exclusion of evidence under Rule 403 … is an extraordinary remedy and should be used sparingly")

13

(internal quotation marks omitted). The age or ambiguity of OV-B's allegations may decrease their probative value, but not enough to counsel exclusion under Rule 403. *Contra* Doc. 120 at 7.

**2**

The Government also seeks to offer Rule 404(b) evidence from OV-C. She expects to testify about a particular encounter with Brooks and Golubski at the Delevan office, and a specific time that Brooks allegedly attempted to assault her. Doc. 102 at 16–17.

This proposed testimony is relevant. *See United States v. Cushing*, 10 F.4th 1055, 1078 (10th Cir. 2021) ("[T]he relationship between alleged coconspirators is relevant to a charge of conspiracy."). It tends to support the Government's argument that Brooks and Golubski used intimidation and physical violence against women at Delevan in pursuit of a shared end. *See* Section II.C.1., *supra*. And it bolsters the Government's point about "grooming," where threats and violent conduct trade off with gifts and nonviolent conduct. *See* Doc. 102 at 13, 38–39; *United States v. Tony*, 948 F.3d 1259, 1262 (10th Cir. 2020) ("[O]ffering … methamphetamine evidence to show why [someone] was acting erratically and violently … would have been permissible under Rule 404(b)."); *United States v. Record*, 873 F.2d 1363, 1375 (10th Cir. 1989) (noting the relevance of evidence showing a distinctive "method").

Similarly, OV-C's proposed testimony is admissible for a proper purpose. It tends to show a *modus operandi* without relying on propensity inferences. Or, as the Government puts it, OV-C's testimony "show[s] the 'interdependence' between Brooks and Golubski" as well as Brooks's "preparation and plan in grooming teenage girls." Doc. 102 at 38–39. This theory makes sense in light of the charged acts, which start with Delevan. That apartment complex was allegedly operated and controlled by Brooks, who used it to "conduct[] criminal activity that included sex trafficking." Doc. 1 at 3. To that end, he allegedly targeted "young girls who were runaways" or "from broken homes," and those recently released from a specific juvenile correctional facility. *Id.* These individuals often came to stay at Delevan, the Government alleges, and some were held in Brooks's office. *Id.* at 3–4. Once at Delevan, they were subject to violence or threats of violence *Id.* at 3–4, 7. At the same time, Golubski allegedly shielded Delevan from scrutiny, visited Delevan to meet with Brooks, and participated in violence against Delevan's residents. *Id.* at 3–4, 8. This pro-

cess was allegedly up and running when Persons 1 and 2 came to Delevan in the late 1990s. *See id.* at 4, 7.

Those tactics are the subject of OV-C's proposed testimony. She will describe her recruitment by Brooks, her time at Delevan, and how Brooks and Golubski treated her while she was there. Doc. 102 at 16–17. This testimony contains a distinctive method of intimidation, as well as a distinctive location (for the most part, the Delevan complex). *Cf. United States v. Shumway*, 112 F.3d 1413, 1420 (10th Cir. 1997) (noting that such factors can evince a "signature quality"); *see also United States v. Isabella*, 918 F.3d 816, 842 (10th Cir. 2019) (distinctive method of conducting illicit communications, among other things, "was probative of [the defendant's] intent and modus operandi"). The Government might not point to a "highly unique" factor tying OV-C's testimony to Person 1 and Person 2's allegations, but it points to many "lesser unique factors" that serve the same function when considered together. *See Shumway*, 112 F.3d at 1420; *see also Golubski*, 2024 WL 1199256, at *8.

Brooks argues that OV-C's statements "show nothing relating to plan or preparation" because they occurred during the alleged conspiracy. Doc. 120 at 8. And Golubski argues that the Government's "grooming" theory is incompatible with its *modus operandi* arguments. Doc. 116 at 3–4, 10–11. Neither of these arguments persuades.

Brooks's argument interprets the alleged plan too narrowly. As the Government explains, the point is not "to demonstrate preparation and plan for the charged sexual abuse of Persons 1 and 2." Doc. 122 at 14. Rather, the Government alleges that Brooks set up (and Golubski enabled) a scheme that worked in a particular way. *Cf. Roberts*, 185 F.3d at 1142 (approving admission of evidence under Rule 404(b) on a "common scheme" theory). And since OV-C's experience closely resembles the experiences of Persons 1 and 2 (and OV-B), OV-C's testimony supports Persons 1 and 2's allegations. It does so without relying on character evidence; the permissible inference is simply that the perpetrator of the acts against OV-C is likely to be the same person as the perpetrator of the acts against Person 1 and Person 2 to the extent the perpetrator employed unique methods and both acts were allegedly committed as part of the same ongoing operation.

Golubski's argument is also unpersuasive. He contends that "grooming" evidence is not relevant "where the co-defendants are not alleged to have coaxed or enticed their victims" and are instead

alleged "to have violently 'compelled'" them. Doc. 116 at 4. But as the Government argues, Doc. 122 at 14, the alleged *modus operandi* involves both grooming and violence, combined in strategic ways to identify, isolate, and then control young women. OV-C's account contains both of those aspects. And critically, it describes events at Delevan that occurred in roughly the same time frame described by Persons 1 and 2. Doc. 102 at 14; Doc. 1 at 4, 7; *Shumway*, 112 F.3d at 1421.

Golubski also contends that OV-C's allegations should be excluded pursuant to Rule 403. Doc. 116 at 5. But her allegations pass that balancing test. OV-C's allegations are highly probative of the alleged perpetrator(s)'s identities, and/or those individuals' *modus operandi*. For example, OV-C alleges an assault in Brooks's office for which Brooks and Golubski were both allegedly present. Her description clarifies the function of Brooks's office, the relationship between Brooks and Golubski, and how Brooks allegedly set up potential targets. *See* Doc. 102 at 16–17. The probative value of that testimony is not outweighed by a risk of undue prejudice. True, OV-C (like all the OVs) proposes testimony with inflammatory details. Those details are, nevertheless, what make the testimony relevant. And though they may provoke an emotional reaction, they do not suggest a decision based solely on that reaction. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) (explaining that "unfair prejudice" in the context of Rule 403 means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").

**3**

The Government separates OV-F's proposed Rule 404(b) testimony into four pieces. The first describes how Brooks treated OV-F while she lived at Delevan, including in his office. Doc. 102 at 21–22. The second describes an incident in which Brooks confronted OV-F over allegedly missing money or drugs, an interaction for which Roberson was present. *Id.* at 22. The third is testimony about OV-F living with Roberson in Olathe, Kansas. *Id.* at 22–23. And the fourth is testimony about a time "when [OV-F] went into labor" and was denied help by Robinson. *Id.* at 23.[6] All four pieces are admissible under Rule

---

[6] The Government originally referred to Brooks and Robinson, but clarified that only Robinson was involved. Doc. 122 at 18. It agrees that this evidence should be admitted, if at all, against Robinson alone. *Id.*

404(b).[7] In each case, the "evidence is probative of a material issue other than character." *Huddleston*, 485 U.S. at 686. Some of the evidence is offered against Brooks alone, against Roberson alone, or the two of them together. Doc. 102 at 21–23. Another portion is offered against Robinson alone. Doc. 102 at 23; Doc. 122 at 18.

In each case, the Government's theory of relevance is roughly the same: Defendants had a unique *modus operandi*. Doc. 102 at 39. They isolated a young woman in an apartment (in the Kansas City, Kansas area) and used violence or threats of violence to keep her there, allegedly going so far as to deny medical care. Such evidence is relevant to the Government's conspiracy charge, which accuses Defendants of agreeing to "injure, oppress, threaten, and intimidate young women … in the free exercise and enjoyment of their right … to be free from involuntary servitude," Doc. 1 at 2, and carrying out that agreement using similar acts against Person 1 and Person 2. And it is relevant to the Government's involuntary servitude charges. *See United States v. Kaufman*, 546 F.3d 1242, 1265 (10th Cir. 2008) (noting that proof of ridicule and fear may show the "compulsion of services by the use or threatened use of physical … coercion" required under 18 U.S.C. § 1584). If certain tactics were effectively deployed against OV-F to hold OV-F in a condition of servitude, then very similar tactics were likely to be effective regarding Persons 1 and 2. Nothing about that chain of inferences involves an inference that Brooks, Roberson, and Robinson tend to commit bad acts. Instead it shows that if Brooks, Roberson, and Robinson committed the prior bad acts involved OV-F, that they are more likely to have been the individuals who committed similar acts against Person 1 and Person 2 because the acts are similar. *Mares*, 441 F.3d at 1157 ("Similarity may be demonstrated through [the] physical similarity of the acts.") (internal quotation marks omitted); *cf. United States v. Hopkins*, 608 F. App'x 637, 644 (10th Cir. 2015) (concluding that an alleged "manner of committing [several] robberies"—by discharging firearms and demanding money—seemed "common, not unique").

Rule 403 is no obstacle, either. OV-F's proposed testimony is highly probative and no more prejudicial than, for example, the acts alleged in the indictment. *Golubski*, 2024 WL 1199256, at *9. To be

---

[7] As the Government notes, Doc. 122 at 15, much or all of OV-F's proposed testimony appears intrinsic to the charged crimes and would be admissible on those grounds. *See Murry*, 31 F.4th at 1290–91; Section II.A, *supra*.

sure, she alleges some things that are not tied to Delevan. Doc. 102 at 22–23 (describing an Olathe apartment). But the probative value of that evidence overwhelms the risk that it will distract the jury or otherwise suggest a decision on improper bases. *See United States v. McGlothin*, 705 F.3d 1254, 1262 (10th Cir. 2013) ("[E]xclusion of evidence under Rule 403 … is an extraordinary remedy and should be used sparingly.").

This is so even considering, for example, OV-F's "delay in reporting the accusation." *Contra* Doc. 120 at 11; Doc. 121 at 9; *United States v. Watson*, 766 F.3d 1219, 1240 (10th Cir. 2014) (acknowledging that delay can make evidence less relevant but that such conclusions depend on "the facts and circumstances of each case"). "[T]here is no absolute rule regarding the number of years that can separate offenses." *Shumway*, 112 F.3d at 1421 (internal alterations omitted). Instead, the circumstances of a case control. *Id.* And although OV-F's allegations are old, the circumstances suggest that they are nonetheless probative.

Roberson and Robinson disagree that OV-F's proposed testimony is admissible. Their objections are not persuasive.

Roberson notes the Government's use of the word "pattern," contending that this word choice reveals the Government's desire to use a forbidden propensity inference. Doc. 121 at 2–4. He also argues that evidence of a Rule 404(b) "plan" must show "intent." *Id.* at 4–7.[8] The first point makes too much of the Government's word choice. Using the word "pattern" to describe its argument does not mean that the Government is offering forbidden propensity evidence. *Roberts*, 185 F.3d at 1142 (using the term "pattern" while affirming a decision to admit Rule 404(b) evidence). The second point is simply not true. Rule 404(b) does not set forth an exhaustive list of acceptable purposes, so it does not make sense to parse the meaning of "plan." *See Tan*, 254 F.3d at 1208. If the Government offers the evidence for a non-propensity purpose—and it does—then Rule 404 does not stand in its way. *Id.* That is true even if the Government's theory does

---

[8] Roberson also argues at length about Rule 413, *see* Doc. 121 at 14–24, but the Government does "not seek to admit any Rule 413 evidence" against him and agrees to a limiting instruction along those lines, *see* Doc. 122 at 2 n.3. Robinson seeks a similar limiting instruction, Doc. 119 at 2, and the Government again agrees, Doc. 122 at 2 n.3.

not fit comfortably within one of Rule 404(b)'s enumerated examples. *Id.*

Finally, Robinson argues that the portion of OV-F's testimony that would be offered against him is not relevant. Doc. 119 at 5. "Simply put," he says, OV-F "describes a scenario where [he] didn't participate in any act of physical or sexual abuse against her, didn't ever restrain her freedom, wasn't violent, and mostly just 'did maintenance' [at Delevan]." *Id.* But the alleged incident involving Robinson and OV-F is very similar to another incident involving Robinson and Person 1. *Compare* Doc. 102 at 23, *with* Doc. 1 at 5. Those similarities make OV-F's Robinson testimony relevant. *Shumway*, 112 F.3d at 1420; *see* Section II.C., *supra* (discussing the relevance of evidence demonstrating the alleged nature and scope of Defendants' conspiracy).

### III

For the foregoing reasons, the Government's Motion for an Order Permitting Admission of Evidence, Doc. 102, is GRANTED.

It is so ordered.

Date: August 22, 2024

                                           s/ Toby Crouse
                                           Toby Crouse
                                           United States District Judge