# UNITED STATES DISTRICT COURT
## District of Kansas
(Topeka Docket)

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                       CASE NO. 5:22-cr-40086-TC-RES

CECIL A. BROOKS (1),
LEMARK ROBERSON (2),
RICHARD ROBINSON (3),
    a.k.a. "Bone,"

        Defendants.

## GOVERNMENT'S OPPOSITION TO DEFENDANT ROBINSON'S MOTION TO DISMISS COUNT TWO OF THE INDICTMENT

The United States of America, by and through undersigned counsel, respectfully submits this response to Defendant Robinson's Motion to Dismiss Count Two of the Indictment, which the other defendants have now joined and seek to extend to Count 3. (Doc. 142, 152). The defendants claim that Counts Two and Three should be dismissed in their entirety under the *Ex Post Facto* Clause based solely on the claim that the government's Indictment included additional factual findings that, under the current version of the statute, would result in a statutory maximum term of imprisonment of life, whereas under the version of the statute that existed in 1996, *i.e.*, when the charged conduct began, the defendants would be subject to a lower statutory maximum penalty.

The government acknowledges that the Indictment includes additional language referring to kidnapping and aggravated sexual abuse that would result in life imprisonment under the current version of the statute and that the penalty sheets attached to the Indictment incorrectly refer to the statutory maximum term of imprisonment as life.  (Doc. 1).  As detailed below, the maximum term of imprisonment as to Count Two and Count Three under the applicable version of § 1584 is ten years.[1]

However, contrary to the defendants' claims, Counts Two and Three as charged in the Indictment do not violate the *Ex Post Facto* Clause.  The *Ex Post Facto* Clause bars charges and sentences that "retroactively alter the definition of crimes or increase the punishment for criminal acts."  *Henderson v. Scott*, 260 F.3d 1213, 1215 (10th Cir. 2001) (quotation omitted).  Counts Two and Three do neither.  The defendant does not contest, nor could he, that the substantive conduct prohibited by 18 U.S.C. § 1584 and charged in Counts Two and Three of the Indictment—that the defendant "knowingly and willfully [held] to involuntary servitude . . . any other person for any term"—has not changed since 1996.  And nothing in the *Ex Post Facto* Clause prohibits the government from including in the Indictment additional facts beyond the statutorily required elements.  Where, as here, the defendants have been charged with the correct substantive violation and have not been sentenced, the appropriate outcome is simply for this Court to ensure that, if convicted, the defendant is sentenced to a term of imprisonment that does not exceed the maximum (here,

---

[1] The penalty sheet correctly states that, as to Count One (18 U.S.C. § 241), the maximum penalty is ten years' imprisonment; and if the acts committed in violation of § 241 include kidnapping or its attempt, or aggravated sexual abuse or its attempt, the maximum penalty is life imprisonment.

ten years) that applied at the time that the charged conduct occurred.  Thus, the Court

should deny the defendant's motion.

## I.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

On November 10, 2022, a federal grand jury returned an Indictment under seal

charging all three defendants with one count of violating 18 U.S.C. § 241 (Count One) and

one count of violating 18 U.S.C. § 1584 (Count Two), and charging Defendants Brooks

and Roberson with a second count of violating 18 U.S.C. § 1584 (Count Three).  (Doc. 1).

The underlying conduct for Count One occurred between on or about January 1, 1996, and

December 31, 1998; the underlying conduct for Count Two occurred between on or about

September 6, 1996, and October 1997; and the underlying conduct for Count Three

occurred between on or about December 1997 and March 1998.  (Doc. 1).  The conduct

involved a conspiracy to use physical beatings, sexual assaults, and threats to coerce Person

1 and Person 2, both of whom were under 18 years old at the time, into providing sexual

services to the defendants and others.

All three counts charge that defendants' conduct "included kidnapping and an

attempt to commit kidnapping, and aggravated sexual abuse and an attempt to commit

aggravated sexual abuse."  (Doc. 1).  The defendants do not contest that these statutory

aggravating sentencing factors were included in 18 U.S.C. § 241, the statute charged in

Count One, as it existed at the time of the charged conduct in Count One.

Counts Two and Three charge that the defendants named in each count "knowingly

and willfully held [Person 1 or Person 2] to involuntary servitude for a term."  (Doc. 1).

Counts Two and Three also charge that the defendants' conduct "involved the sexual and

physical abuse, and kidnapping, of a child . . . then under the age of 18 years," and include

other factual findings specific to each count, such as the identity of the defendants to whom

the named victim was forced to provide sexual services.

As is the practice in this district, in addition to the Indictment returned by the grand

jury, the government attached a two-page document outlining the penalties applicable to

each count of the Indictment.  The government acknowledges that these penalty sheets

reflect the incorrect maximum term of imprisonment applicable to Counts Two and Three.[2]

These penalty sheets were not discussed with the grand jurors before their deliberations.

On April 4, 2025, Defendant Robinson filed the motion currently before the Court,

seeking to dismiss Count Two in its entirety on *ex post facto* grounds.  (Doc. 142).  On May

21, 2025, Defendant Roberson, joined by Defendant Brooks, filed a motion for leave to file

after deadline, seeking to join Defendant Robinson's motion and extend the arguments to

Count 3.  (Doc. 152).

The government hereby incorporates the "summary of crimes charged in the

Indictment" in the government's Rule 404(b) Notice, which sets forth details of the facts

underlying the charges in this case.  (Doc. 102).

---

[2]  The penalty sheets incorrectly indicate that the maximum penalty for Counts Two and
Three is 20 years of imprisonment, unless death results from the violation or the violation
includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to
commit aggravated sexual abuse, or an attempt to kill, in which case the offense is
punishable by any term of years of imprisonment or life. (Doc. 1 at 12-13).  These penalties
apply only to violations of § 1584 that took place after the statute was amended in 2000.
As discussed below, the maximum term of imprisonment for those counts is ten years.

## II.    ARGUMENT

The defendants claim that the "penalties identified in the indictment are from a version of the statute which was not enacted until after the crimes" for which they have been charged and, therefore, Counts Two and Three must be entirely dismissed as violating the *Ex Post Facto* Clause.  (Doc. 142 at 1).  Contrary to the defendants' claim, there were no penalties "identified in the indictment."  Nowhere in the Indictment itself are specific penalties discussed, and the inclusion of additional factual findings by the grand jury in Counts Two and Three and the attachment of penalty sheets do not render either count invalid.  The defendants have been appropriately charged with the statutory elements of § 1584 and, as they have yet to be convicted and sentenced, no *ex post facto* sentencing violation could possibly have occurred.

### A.    The *Ex Post Facto* Clause Does Not Require Dismissal of Counts Two or Three

The *Ex Post Facto* Clause "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts."  *Henderson*, 260 F.3d at 1215 (quotation omitted).  The Supreme Court has explained that the *Ex Post Facto* Clause bars application of "any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed."  *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925); *see also United States v. Kurtz*, 819 F.3d 1230, 1235 (10th Cir. 2016) (listing types of laws that the *Ex Post Facto* Clause prohibits).  "The central concern of the *Ex Post*

*Facto* Clause is fair notice to a defendant that the punishment for a crime has been increased from what it was when the crime was committed." *Kurtz*, 819 F.3d at 1235 (quotation omitted). "At sentencing, an *ex post facto* violation occurs when the district court applies a [guideline or statute] to an event occurring before its enactment, and the application of that [guideline or statute] disadvantages the defendant by altering the definition of criminal conduct or increasing the punishment for the crime." *Id.* (quotation omitted).

As Defendant Robinson correctly notes, two critical elements must be present for a defendant to prevail on an *ex post facto* claim: "first, the law must be retroactive, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it." *Miller v. Florida*, 482 U.S. 423, 430 (1987); *see also Johnson v. United States*, 529 U.S. 694, 699 (2000) (finding that, to successfully raise an *ex post facto* claim, a defendant "must show both that the law he challenges operates retroactively (that it applies to conduct completed before its enactment) and that it raises the penalty from whatever the law provided when he acted").

In this case, the defendants do not and cannot claim that they meet the first element because the law charged in the Indictment is not retroactive. The substantive language of § 1584—and the elements required to prove the offense—is the exact same language that was in effect between 1996 and 1998, the time of the charged conduct, and did not change with the 1996 or 2000 amendments to the statute. The statute provided then, and still provides today, that a violation of § 1584 occurs when a person "knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude, any other person for any term, or brings within the United States any person so held[.]"  18 U.S.C.

6

§ 1584 (as amended 1994, 1996, 2000, 2008). Counts Two and Three of the Indictment mirror this language and set forth the elements of the offense as it existed at the time of the conduct. Thus, neither Count Two nor Count Three retroactively charges a violation of § 1584 that did not exist at the time of the conduct, and the offenses as charged do not violate the *Ex Post Facto* Clause.

The defendants also cannot meet the second element of an *ex post facto* claim because they cannot establish that they have been or will be disadvantaged in any way. They have not yet been sentenced, and the government will not seek a sentence beyond ten years as to Counts Two and Three, which was, as discussed below, the statutory maximum term of imprisonment applicable at the time of the charged conduct. Counts Two and Three also include factual findings (*i.e.*, that the conduct included kidnapping and aggravated sexual abuse, or the attempt to commit those acts) that would increase the sentence to life under the penalty provisions of the current version of the statute. Because that language is not part of the version of § 1584 that existed in 1996 and 1997, it is surplusage for these counts—it is "independent of and unnecessary to the offense on which a conviction ultimately rests." *United States v. Brooks*, 438 F.3d 1231, 1237 (10th Cir. 2006). However, the mere inclusion of surplusage in an indictment does not violate the *Ex Post Facto* Clause. Indeed, speaking indictments that include facts beyond the statutory elements are common practice in federal courts, and the defendant has cited no case, and the government is unaware of any, to suggest that speaking indictments violate the Constitution.[3]

---

[3]  To the contrary, Federal Rule of Criminal Procedure 7(d) provides courts with the *discretion* to strike surplusage from an indictment, and only upon a defendant's motion.

The defendant's reliance on the penalty sheets is likewise misplaced. Although the government acknowledges that the penalty sheets reflect the incorrect statutory maximum term of imprisonment as to Counts Two and Three, they were not discussed with the grand jury. Rather, they were attached to the Indictment, in accordance with local practice, as a courtesy to the Court and the parties.[4] If the defendant is convicted, this Court, not the grand jurors, will determine his sentence, and the *Ex Post Facto* Clause is not implicated by a sentence that has not yet been imposed.

Dismissal of Counts Two and Three is not the appropriate remedy for these issues. Any potential *ex post facto* concern can easily be avoided simply by ensuring that, as to Counts Two and Three, the defendant is sentenced to a term of imprisonment under the applicable statutory maximum of ten years. Courts routinely find that capping a sentence to the statutory maximum that existed at the time of the charged criminal conduct is the

---

Fed. R. Crim. P. 7(d). Notably, nothing in this rule suggests that striking surplusage is mandatory in order to avoid *ex post facto* concerns. Moreover, in this case, the defendants are not prejudiced by the inclusion of these factual findings in Counts Two and Three. The exact same facts are included in Count One as aggravating sentencing factors under 18 U.S.C. § 241, and there is no dispute that 18 U.S.C. § 241 as it existed in 1996 included those sentencing factors.

[4] The penalty sheets indicate that the maximum penalty for Counts Two and Three is 20 years of imprisonment, unless death results from the violation or the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, in which case the offense is punishable by any term of years of imprisonment or life. (Doc. 1). The government acknowledges that these penalties refer to the 2000 amendments and, accordingly, these penalties do not apply to the charges in this case. Although the government's position is that the penalty sheets are not relevant to the analysis of an *ex post facto* claim, the government notes that the penalty sheets indicate a higher penalty than the statutory maximum applicable to the defendant; thus, the defendant can hardly claim to have been disadvantaged here, where the government has agreed to seek a lower sentence than that included in the penalty sheet.

appropriate response where the penalties have been subsequently increased by Congress. *See United States v. Bartoli*, 2023 WL 5206446, at \*6-8 (6th Cir. Aug. 14, 2023) (remanding for resentencing—not reversing convictions—after finding the district court had applied a ten-year statutory maximum sentence, when the statutory maximum for the offenses at the time of the conduct was five years, in violation of the *Ex Post Facto* Clause); *United States v. Brewington*, 944 F.3d 1248, 1258 (10th Cir. 2019) (remanding for resentencing—not reversing convictions—after finding an *ex post facto* violation in the district court's application of Guidelines promulgated after the offense conduct, which provided a higher applicable Guidelines range). This is not a case in which a criminal statute, newly enacted after the defendants' conduct, is improperly applied retroactively to criminalize the defendants' "previously innocent" conduct, in which case the charges would be dismissed. *Tijerina v. Patterson*, 507 F. App'x 807, 809 (10th Cir. 2013) ("The [*Ex Post Facto*] Clause prohibits laws that make a previously innocent act criminal, increase the punishment for a crime after its commission, or deprive a defendant of a defense that was available at the time a crime was committed."). Rather, as discussed above, the elements of the offense have remained unchanged since before the 1996 amendments. The only relevant change to the statute was the maximum punishment. And as the defendant has not yet been sentenced, there has not been an *ex post facto* violation. Accordingly, this Court can avoid any *ex post facto* concern by sentencing the defendant, upon conviction, to a maximum term of imprisonment of ten years as to Counts Two and Three. The government hereby attaches a revised penalty sheet that provides the appropriate penalties under the 1996 version of the statute.

**B.      The Statutory Maximum Term of Imprisonment for Count Two is Ten Years**

The penalty sheets attached to this response set forth the correct penalties applicable to the charged offenses.   Defendant Robinson suggests that the maximum term of imprisonment for Count Two is either five years (which was the statutory maximum under the version of the statute that existed before September 30, 1996) or ten years (which was the statutory maximum under an amended version of the statute that became effective on September 30, 1996).  His motion does not take a position on which applies.  As explained below, the correct statutory maximum term of imprisonment is ten years.

The Indictment charges that the conduct underlying Count Two occurred between September 6, 1996, and October 1997.  Congress amended § 1584 in 1996, increasing the statutory maximum penalty for the offense from five years to ten years.  That ten-year statutory maximum applied to all offenses occurring on or after September 30, 1996, until the statute was again amended in 2000.  18 U.S.C. § 1584 (effective Sept. 30, 1996) (amended 2000 and 2008).  The 1996 version of the statute is applicable to Count Two because the Indictment alleges that the offense conduct started on or about September 6, 1996, and continued into October 1997.

Although the time period charged in Count Two straddles the effective date of the 1996 amendment, the penalty provisions set forth in the 1996 amendment apply to Count Two because a violation of § 1584 is a continuing offense.  As a continuing offense, the violation of § 1584 charged in Count Two is subject to the penalty that existed at the conclusion of the charged criminal conduct in October 1997.  Where, as here, a crime

involves a continuing offense, "application of a law enacted after the crime begins does not

implicate the *ex post facto* clause [sic]." *United States v. Boyd*, 149 F.3d 1062, 1068 (10th

Cir. 1998); *see also United States v. Massey*, 48 F.3d 1560, 1568 n.7 (10th Cir. 1995)

(finding that "[s]ince a conspiracy is a continuing offense, a conspirator may be sentenced

under a law that is passed during the course of the conspiracy and that increases the

penalty").

A crime is classified as a "continuing offense" if "the explicit language of the

substantive statute compels such a conclusion, or the nature of the crime involved is such

that Congress must assuredly have intended that it be treated as a continuing one." *Toussie

v. United States*, 397 U.S. 112, 115 (1970). The mark of a continuing offense is that it

"perdures" beyond any one original illegal act, and that each day brings a renewed threat

of the criminality that Congress sought to prevent. *Id.* at 122. The Tenth Circuit has

described a continuing offense as one involving "a prolonged course of conduct," which

"is not complete until the conduct has run its course." *United States v. Dunne*, 324 F.3d

1158, 1164 (10th Cir. 2003); *see also United States v. Morales*, 11 F.3d 915, 921 (9th Cir.

1993) (finding that, in general, a continuing offense involves "(1) an ongoing course of

conduct that causes (2) a harm that lasts as long as that course of conduct persists"); *United

States v. De La Mata*, 266 F.3d 1275, 1285 (11th Cir. 2001) (holding that "[a] continuing

offense is one which is not complete upon the first act, but instead continues to be

perpetrated over time").

Although it appears that no court has specifically addressed whether § 1584 is a

continuing offense, courts have found other similar Chapter 77 crimes such as sex

11

trafficking and forced labor to be continuing offenses.  *See United States v. Majeed*, No.
2:21-cr-20060, 2023 WL 4826849, at \*4-7 (D. Kan. July 27, 2023) (finding that forced
labor under 18 U.S.C. § 1589 is a continuing offense); *United States v. Powell*, No. 15-cr-
244, 2016 WL 524251, at \*4 (W.D. Wash. Feb. 10, 2016), *aff'd*, 727 F. App'x 311 (9th Cir.
2018) (finding that "[t]he statutory and legislative history of Section 1591 [which
criminalizes sex trafficking] are abundantly clear that it is to be treated as a continuing
offense. . . .  [B]y its nature, sex trafficking is an ongoing course of conduct that causes
harm as long as the conduct exists and perdures long beyond the original illegal act");
*United States v. Webster*, No. 06-cr-96, 2007 WL 9821510, \*1 (D. Alaska Nov. 29, 2007)
(finding that § 1591 charges "[p]atently . . . charge a course of conduct that can continue
over a considerable period of time" and concluding that § 1591 offenses "are continuing
offense crimes"); *United States v. Unpradit*, 35 F.4th 615, 628 (8th Cir. 2022) (finding that
an offense under § 1591(a)(2) is a continuing offense and that the "nature of the crime is
such that Congress must have intended it to be treated as continuing rather than as a series
of individual violations for each moment in time that a victim is 'maintained'"); *United
States v. Bello*, No. 10-cr-397, 2011 WL 855375 (N.D. Ga. March 9, 2011) (adopting report
and recommendation of magistrate at 2011 WL 855399, and finding offenses under
§§ 1589, 1590, and 1592 are continuing offenses for statute of limitations purposes).

The analysis in *United States v. Majeed* is particularly instructive.  In that case, the
court examined the offense of forced labor under 18 U.S.C. § 1589 and found that:

> the nature of the forced labor offense suggests Congress intended to
> criminalize a continuing offense—it is not a "discrete" offense that focuses
> on individual executions of a scheme . . . .  The focus of the offense is on

> obtaining the labor [or] services of the victim, through means that are not
> discrete in nature. As alleged in the Indictment, even if certain acts by
> individual defendants were discrete, the criminal conduct continued because
> these were acts in a series or scheme that allowed them to obtain the labor
> and services of each victim over a lengthy period of time, either directly or
> under an aiding-and-abetting theory.

*Majeed*, 2023 WL 4826849, at *6.

The involuntary servitude statute at issue in this case is the predecessor to and much like the forced labor statute at issue in *Majeed*. The plain language of § 1584 in effect at the time of the charged conduct—and today—provides in relevant part that it is an offense for anyone to "knowingly and willfully hold[] to involuntary servitude or sell[] into any condition of involuntary servitude, any other person for any term . . . ." 18 U.S.C. § 1584. By its very nature, involuntary servitude is a continuing offense. Section 1584 does not criminalize a single discrete act of compelling a person's involuntary service. Rather, it criminalizes *holding* a person or selling a person into a *condition* of involuntary servitude for any *term*.[5] This statutory language—the holding, in a condition, for a term—does not refer to discrete acts or individual instances of conduct. Rather, the language criminalizes "a prolonged course of conduct," *Dunne*, 324 F.3d at 1164, that causes "harm that lasts as long as that course of conduct persists." *Morales*, 11 F.3d at 921. This language shows

---

[5] The Tenth Circuit has endorsed jury instructions that defined "involuntary servitude" as "a *condition* of compulsory service in which the alleged victim is compelled to perform labor or services against the victim's will for the benefit of a defendant due to the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *United States v. Kaufman*, 546 F.3d 1242, 1260 (10th Cir. 2008) (emphasis added).

that "Congress intended to criminalize a continuing offense—it is not a 'discrete' offense that focuses on individual executions of a scheme." *Majeed*, 2023 WL 4826849, at *6.

The continuing nature of this offense is reflected in the language of the Indictment. Count Two charges that the named defendants, "while aiding and abetting one another, knowingly and willfully held Person 1 to involuntary servitude for a term," and provides the date range of September 6, 1996, through October 1997 as the "term" for that count. (Doc. 1). In other words, Person 1 was held in involuntary servitude for that entire time period. Moreover, as the Indictment makes clear, the defendants engaged in an ongoing involuntary servitude scheme over the course of one month to multiple years. Accordingly, § 1584, like other Chapter 77 offenses, is a continuing offense.

Because a violation of § 1584 is a continuing offense, a defendant "may be sentenced under a law that is passed during the course of the [continuing offense] and that increases the penalty." *Massey*, 48 F.3d at 1568 n.7; *see also Boyd*, 149 F.3d at 1068 (rejecting defendant's argument that his conviction under a statute that was enacted months after the start of his continuing offense violated the *Ex Post Facto* Clause).

## C. There Is Also No *Ex Post Facto* Violation in Count Three, and the Statutory Maximum Penalty is Ten Years

Defendants Roberson and Brooks seek only to extend to Count Three the same arguments that Defendant Robinson made about Count Two and have not offered any additional *ex post facto* arguments. (Doc. 152 at 3). The government acknowledges that the same additional language in Count Two is included in Count Three, and the penalty sheets attached to the Indictment incorrectly state that the statutory maximum penalty is 20

years or life imprisonment.    Thus, the arguments set forth above in Part II.A apply equally to Count Three as they do to Count Two, and neither the additional language nor the penalty sheets create an *ex post facto* problem requiring dismissal.

The ten-year statutory maximum term of imprisonment likewise applies to Count Three.  Unlike the charged conduct in Count Two, the entirety of the charged conduct in Count Three took place *after* the effective date of the 1996 amendments to § 1584, between on or about December 1997 and March 1998.  (Doc. 1).  The 1996 amendments to § 1584, effective September 30, 1996, increased the statutory maximum penalty to ten years.  18 U.S.C. § 1584 (amended 1996).  Accordingly, the statutory maximum penalty applicable to Count Three is ten years, as reflected in the revised penalty sheets attached to this brief.

### III.    CONCLUSION

Accordingly, the government respectfully requests that the Court deny Defendant Robinson's Motion to Dismiss Count Two and deny Defendants Roberson and Brooks' request to dismiss Count Three.  At the sentencing stage, the government will seek a maximum term of imprisonment of ten years as to Counts Two and Three, as reflected in the attached penalty sheets.


Respectfully submitted,

DUSTON J. SLINKARD                              HARMEET DHILLON
ACTING UNITED STATES ATTORNEY      Assistant Attorney General
                                                                Civil Rights Division


By: /s/ *Jabari B. Wamble*                         By: /s/ *Tara Allison*
Jabari B. Wamble                                        Tara Allison
Assistant United States Attorney              Trial Attorney

District of Kansas
500 State Avenue, Suite 360
Kansas City, Kansas 66101
Ph: (913) 551-6730
Email: jabari.wamble@usdoj.gov
Ks. S. Ct. No. 22730

Crim. Section, Civil Rights Div.
U.S. Department of Justice
150 M St. NE
Washington, DC 20002
Ph: (202) 598-7882
Email: tara.allison@usdoj.gov
NY Bar No. 5666029

By: /s/ *Briana M. Clark*
Briana M. Clark
Trial Attorney
Crim Section, Civil Rights Div.
U.S. Department of Justice
150 M St. NE
Washington, DC 20002
Ph: (202) 710-7320
Email: briana.clark@usdoj.gov
DC Bar No. 1735505

CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ *Tara Allison*
Tara Allison